## COMEY *v.* PICKERING.

The right of creditors of a fraudulent vendor of chattels to avoid the sale cannot be exercised against one who. without notice of the fraud, has in good faith purchased the property from the fraudulent vendee.

The omission of the words "So help us God," at the end of the affidavit on a chattel mortgage, does not invalidate the mortgage.

TRESPASS, for taking and carrying away six and one half tons leather board, nineteen barrels alum, ten barrels red, eight barrels resin, one barrel machine oil, the property of the plaintiff. Plea, the general issue, with a brief statement of justification under process. Facts found by the court.

November 16, 1882, William P. Lang, a deputy of the defendant, who was sheriff of the county, having in his hands a writ in favor of George A. Barnes against Joshua S. Holt, attached the chattels mentioned, as the property of Holt, and afterwards sold the same upon the writ.for $349 10. The property so taken was part of the stock of a leather-board mill in Webster, which was sold by Holt to one Charles S. Ladd about Sept. 18, 1882, for the price of which Ladd gave Holt his negotiable note, amounting to $4,833.97, with a mortgage of the same property to secure it. In October, 1882, Holt, being indebted to the plaintiff, sold Ladd's note to him to apply on the debt, and thereupon Ladd executed to the plaintiff a mortgage of the same property to secure the same note, which mortgage was duly recorded in the town-clerk's office in Webster, October 31, 1882. This last mortgage was sworn to by Ladd in New Hampshire, and a certificate thereof made upon the mortgage by the justice, except that the month and day of the month when the oath was taken were omitted, but the affidavit was in fact made before the mortgage was recorded. The defendant objected to the mortgage being read in evidence for this reason, and also because the words "So help us God" were omitted at the end of the affidavit.

It was claimed, on behalf of the defendant, that the sale by Holt to Ladd was fraudulent in law. The court found and held otherwise, but reported the facts concerning the sale, and the possession and management of the property, before and after the sale, at considerable length and in detail, as bearing upon that question. The view taken by the court seems to make those details immaterial, and they are therefore omitted.

To rebut the defendant's claim of fraud in the sale from Holt to Ladd, Holt, against the defendant's objection, was permitted to testify to the conversation between himself and Ladd during the negotiations, and to state the terms of the sale.

*C. C. Rogers* and *Barnard & Barnard*, for the defendant.

*E. H. Woodman*, for the plaintiff.

BLODGETT, J. For the purposes of this case, it is immaterial whether the sale from Holt to Ladd was fraudulent or otherwise. If not fraudulent, Ladd acquired a valid title to the property conveyed against all the world, and of course could mortgage it for the purpose of securing his debt to the plaintiff, or for any other lawful purpose. If, on the other hand, the sale was fraudulent, the property immediately vested in Ladd, and he acquired a title thereto which he could transmit to others. Its only infirmity was the liability of being impeached by Holt's creditors: as to all others it was perfect. But even as to such creditors the sale was not absolutely void, but only voidable; nor was this right without limitation, because the established if not universal rule is, that it cannot be exercised after a conveyance of the property by a fraudulent vendee to a *bona fide* third person for a valuable consideration. The authorities on this point are quite fully collected in Bump Fr. Conv. (2d ed.) 482, and in Benj. Sa. (3d Am. ed.)477, 478.

It is contended, however, that the plaintiff cannot be regarded as such a person, because he seasonably had knowledge of the secret stipulations in the agreement between Holt and Ladd. But if this be conceded, we do not think the validity of his mortgage is thereby affected. The property embraced in it belonged either to Holt or to Ladd, and the plaintiff's debt was due from one or the other of them. There was, therefore, a good consideration for the mortgage; and there is nothing to indicate that it was not given and received in good faith and for a lawful purpose. The plaintiff had the right to secure his debt, and Ladd had the right to give him security on the property; for even if the sale from Holt was fraudulent, it is obvious that Ladd could do with the property all that Holt could have done had he retained it, because as between Holt and Ladd the sale was not voidable, and the legal title was in the latter. Consequently he could, if he pleased, sell or mortgage the property to any of Holt's creditors in satisfaction or security of their debts; and if he did so, the other creditors could have no just ground of complaint, because the property would thus be applied in payment or security of a demand which the law would enforce against it were the original sale declared void. Bump Fr. Conv. 488, 489, and authorities cited. Hence the plaintiff's mortgage stands on the same footing it would have stood on had Ladd acquired an indefeasible title by the sale, and the attaching creditor can no more impeach it in the one case than in the other.

Nor was the mortgage invalid by reason of the omission in the affidavit of the words "So help us God." The affidavit is in the precise form given in Gen. Laws, *c.* 137, *s.* 6, and, moreover, the presumption is that the magistrate administered the proper oath, both in accordance with his duty and his certificate.

The other exceptions require no consideration.

*Exceptions overruled.*

SMITH, J., did not sit: the others concurred.